**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BOBBIE BASSETT,<br><br>*Plaintiff,*<br><br>vs.<br><br>THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS,<br><br>*Defendant.* | ) **ELECTRONICALLY FILED**<br>)<br>) Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED**<br>) |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Bobbie Bassett ("Plaintiff"), by and through the undersigned counsel, files the within Complaint in Civil Action against Defendant, The Pennsylvania Department of Corrections ("Defendant"), averring as follows:

**STATEMENT OF THE PARTIES**

1. At all times relevant herein, Plaintiff resided in Wayne County, Waymart, Pennsylvania 18472. Furthermore, Plaintiff is a 48-year-old biological female.

2. During her tenure as an employee of Defendant, Plaintiff has been forced to endure discriminatory treatment on the basis of her gender and disabilities, which denied her basic human rights, and subjected her to daily distress while she performed her job duties. Premised on the facts below, Defendant flagrantly violated Plaintiff's rights protected by the Americans with Disabilities Act, 43ct of 1990, as amended by the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 12101, *et seq.* (hereinafter, and collectively, the "ADA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII"); the Pennsylvania

Human Relations Act, 43 P.S. § 951, *et seq.* (hereinafter, the "PHRA"); and the related statutes which shielded Plaintiff from retaliatory adverse employment actions for averting said rights.

3.    In or around 2009, Plaintiff, a United States Air Force Veteran, was diagnosed by a physician with (i) post-traumatic stress disorder; and (ii) generalized anxiety disorder.

4.    The post-traumatic stress disorder and generalized anxiety disorder rendered Plaintiff disabled for purposes of the ADA (collectively, the "Disabilities"). At all times relevant herein, Defendant was explicitly aware of Plaintiff's Disabilities.

5.    More specifically, the Disabilities constituted mental health impairments that substantially limited Plaintiff in the pursuit of her daily life activities, resulting in difficulty concentrating, working, and caring for herself.

6.    At all times relevant, Plaintiff was a "qualified individual with a disability" within the purview of the ADA.

7.    The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)). 42 U.S.C. § 12102.

8.    Plaintiff possesses a "disability" pursuant to 42 U.S.C. § 12102(A) as she was diagnosed with the Disabilities delineated above. At all times relevant hereto, the Disabilities impaired Plaintiff's major life activities including difficulty concentrating, working, and caring for herself. Further, Plaintiff's major life activities were impaired through the ways in which Plaintiff was forced to adapt these activities to minimize the risk of exacerbating the Disabilities.

9.    Defendant is a Pennsylvania state agency organized and existing under the laws of the Commonwealth of Pennsylvania which enhances public safety through the housing and

2

rehabilitation of incarcerated individuals in facilities throughout the Commonwealth of Pennsylvania whose central office is located at 1920 Technology Parkway, Mechanicsburg, Pennsylvania 17050. Additionally, Defendant has operations located at 11 Fairview Drive, Waymart, Pennsylvania 18472, the physical location where Plaintiff reported to for her workplace duties (the "Facility").

## JURISDICTION AND VENUE

**A.    This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under Title VII and the ADA (collectively, Plaintiff's claims arising under Title VII and the ADA are identified as the "Federal Law Claims").

11.    Plaintiff is also advancing claims under the PHRA (the "State Law Claims"). This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims. Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.    The United States District Court for the Middle District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

12.    Venue is proper in the United States District Court for the Middle District of Pennsylvania, Pittsburgh Division (the "Middle District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial

3

district. Specifically, these events and omissions occurred within Wayne County, Pennsylvania which is one of the counties encompassed by the Middle District.

**C.     This Court May Exercise Personal Jurisdiction Over Defendant.**

13.    This Court may exercise personal jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court may exercise jurisdiction over Defendant in compliance with the Due Process Clause of the United States Constitution.

14.    Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

15.    42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a).

16.    As discussed above, Defendant is a state agency organized and existing under the laws of the Commonwealth of Pennsylvania whose central office is located at 1920 Technology Parkway, Mechanicsburg, Pennsylvania 17050; further, Defendant maintains the Facility in

4

Pennsylvania and conducts business operations within Pennsylvania. Accordingly, Defendant may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

**D.     Plaintiff has exhausted her administrative remedies and the Federal Law Claims and the State Law Claims are now properly able to be brought before this Court.**

17.     Plaintiff has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and 43 P.S. § 959 and now may proceed to bring this action before the Court. Specifically:

a.  On or about February 20, 2024, Plaintiff dual filed (Pro Se) a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2024-00080 (the "EEOC Charge") and with the Pennsylvania Human Relations Commission (the "PHRC").

b.  On August 27, 2024, the EEOC issued a Determination and Notice of Rights (the "DNR") wherein Plaintiff was afforded ninety days within which to timely file the Federal Law Claims and the State Law Claims. A true and correct copy of the DNR is attached hereto, made a part hereof, and identified as **Exhibit A**. The instant complaint is hereby filed within the ninety-day time period.

**GENERAL ALLEGATIONS**

18.     In or around 2005, Plaintiff commenced her employment with Defendant in the role of Corrections Officer Trainee.

19.     In or around 2018, Plaintiff was promoted to the role of Deputy Superintendent I of Forensic Services (the "First Position").

20.     Pertinent here, Plaintiff is the sole female within the executive staff at the Facility.

5

21.     In or around 2018, Plaintiff discovered that she was ranked as a Deputy Superintendent I, while being compensated by Defendant in her position on the basis of a separate, lower pay scale than her similarly situated male counterparts who occupied the Deputy Superintendent II position, despite Plaintiff having equal or greater qualifications through her education – a master's degree in Rehabilitation Counseling – and thirteen years of relevant experience (the "Pay Disparity").

22.     In or around November of 2019, after Plaintiff had levied several complaints about the Pay Disparity, Plaintiff was promoted to the position of Deputy Superintendent II of Forensic Services (the "Second Position"). Notably, the duties of the First Position and the Second Position were identical, the difference between the two was strictly with regard to Plaintiff's rate of compensation.

23.     Contemporaneous with the above, Plaintiff was directed to complete the duties of both the Second Position and the Deputy Superintendent of Centralized Services position. Defendant's employee, Joe Grillo ("Mr. Grillo"), who had previously fulfilled the role of Deputy Superintendent of Centralized Services, was transferred to the position of Deputy Superintendent of Facility Management.

24.     Currently, Plaintiff is compensated on a salaried basis of $136,000 per annum, while working in two positions while Mr. Grillo is compensated at the same rate while working in one position.

25.     For salient context, Plaintiff received the promotion to the Second Position subsequent to her filing of a gender discrimination and disability complaint with the state Equal Employment Opportunity office in or around August of 2023 (the "EEO Complaint"). However, upon promoting Plaintiff to the Second Position, Defendant placed the responsibilities of both the

First Position and the Second Position upon Plaintiff minus any upward adjustment to Plaintiff's compensation.

26. At all times relevant, Plaintiff's direct supervisor is Superintendent Wahl (hereinafter, "Mr. Wahl").

27. Throughout her tenure with Defendant, Plaintiff has been subject to numerous gender related comments made by Deputy Superintendent Cirelli ("Mr. Cirelli"), Mr. Wahl and Mr. Grillo.

28. Specifically, beginning in or around 2022, Plaintiff, the only female on the Facility's executive staff, has been routinely, derogatorily referred to as "Deputy Mommy." Upon information and belief, said derogatory statement is in specific reference to Plaintiff's gender.

29. Additionally, Plaintiff, a single mother, has been subject to derisive, sarcastic remarks such as, "Of course you have to take your kids to the doctor, you are a single mom," an insinuation which characterized Plaintiff's absence from work to attend such appointments as an excuse, not as the truth.

30. Moreover, Plaintiff's position requires her to counsel and care for mentally ill inmate patients. As set forth above, Plaintiff herself is diagnosed with mental Disabilities, those of which Mr. Cirelli and other executive staff had explicit knowledge.

31. Mr. Cirelli, on at least one occasion, stated, "You can't trust people with mental illness, they're quacks, kooks."

32. Plaintiff has objected to the above-delineated comments made by Mr. Cirelli numerous times, as they are offensive both to her and the inmate patients. Notwithstanding, Mr. Cirelli continued using these derogatory terms.

33.    On or about August 4, 2023, Plaintiff, frustrated with the use of these comments, reported Mr. Cirelli's behavior to Mr. Wahl. However, instead of disciplining or discussing the issue with Mr. Cirelli, Mr. Wahl defended Mr. Cirelli's conduct and stated, "Well, that's just Cirelli." Thereafter, Plaintiff filed the EEO Complaint.

34.    Around this time, Mr. Cirelli instigated rumors within the Facility that Plaintiff had been "terminated" and that she should not be listened to relative to giving orders. This caused a significant amount of confusion within the Facility and rendered Plaintiff's ability to perform her job ineffective.

35.    Prior to Plaintiff's promotion to the Second Position, all of Plaintiff's Employee Performance Reviews (the "EPR") were positive and she was rated "outstanding."

36.    In or around January of 2024, after a period of two years wherein Plaintiff did not receive a performance review, Plaintiff was summoned to an early performance review, as Plaintiff's performance reviews were historically conducted in the month of April, and wherein Plaintiff's EPR, conducted by Mr. Wahl, was dramatically, retaliatorily downgraded to "satisfactory."    Also present at the EPR meeting was Defendant's Human Resources representative, Nicole Trojneski. Notably, never before had a human resources representative been present during Plaintiff's performance reviews.

37.    In response to the EPR downgrade, Plaintiff stated that the downgrade was retaliatory and due to her filing of the EEO to which Mr. Wahl responded, "I knew you were going to say this was retaliatory and that's why I had human resources here as a witness."

38.    In the meeting wherein Mr. Wahl conducted Plaintiff's EPR, he told her, "I know you're a single mom, but you have to get your priorities straight."

39. Additionally, the EPR also stated that Plaintiff missed meetings. Notably said meetings were of great importance and priority to Plaintiff as they concerned topics such as workplace safety, emergency contagious outbreaks, and general management. However, Plaintiff's frequent absence from the same was inevitable, given that Plaintiff was being scheduled for multiple meetings and/or instructed to conduct rounds at the same time due to her additional job duties discussed herein.

40. Moreover, in further efforts to exclude Plaintiff from said meetings, Plaintiff's office is on the opposite side of the Facility, segregated from the rest of the executive male offices at the Facility, which has been explicitly used as an excuse by Mr. Wahl to exclude Plaintiff, stating to Plaintiff that he "forgot" about her.

41. Due to Plaintiff's downgraded EPR, (i) the EEO rescinded its investigation of the EEO Complaint, stating it was due to the same; and (ii) has diminished Plaintiff's chances for future promotions.

42. Following the negative EPR, Plaintiff contacted Defendant's Director of the human relations department, Ann Kovulchick ("Ms. Kovulchick"). Ms. Kovulchick advised Plaintiff to file with the Equal Employment Opportunity Commission and, as set forth above, Plaintiff filed a charge of discrimination, pro se, with the EEOC.

43. Additionally, Ms. Kovulchick divulged to Plaintiff that Defendant's Deputy Secretary, Robert Marsh, recommended Mr. Wahl terminate Mr. Cirelli and Mr. Grillo. Obviously, Mr. Wahl did no such thing.

44. Ensuing the above events, Plaintiff has since been shunned by her male colleagues; she is rarely, if ever spoken to, and ignored.

9

45. The fact pattern thoroughly belabored and discussed herein clearly demonstrates a discriminatory and toxic workplace for both women and those who suffer from disabilities wherein, (i) Defendant has condoned Mr. Cirelli's behavior; and (ii) since Plaintiff's filing of the EEOC Complaint, Mr. Wahl has made an undeniable effort to retaliate against Plaintiff and isolate her.

46. Plaintiff remains employed by Defendant but has been on leave since July of 2024.

## COUNT I
### UNCORRECTED HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.*; 43 Pa. Cons. Stat. § 951, *et seq.*

47. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

48. To establish a hostile work environment claim under Title VII an employee must show that "(1) the employee suffered intentional discrimination because of his/her race or gender, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the Plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." See *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

49. The 3rd Circuit has also noted that severe or pervasive is the correct standard under which apply a totality of the circumstances approach in examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

**A. Plaintiff Suffered Intentional Discrimination Because of Her Gender.**

50. As stated above, Plaintiff is an adult biological female.

10

51.     Throughout the course of Plaintiff's employment, Plaintiff was treated less favorably than her male coworkers with regards to (i) her compensation; (ii) the physical location of her office; and (iii) being subjected to numerous humiliating derogatory comments from her co-workers and supervisors.

52.     Furthermore, when Plaintiff complained to Defendant's agent, Mr. Wahl, about the discriminatory behavior set forth above, Mr. Wahl essentially blew off her comments and proceeded to take no action, investigatory or otherwise.

**B.     The Discrimination Plaintiff Endured was Sufficiently Severe and Pervasive Within the Work Environment and Would Have Detrimentally Affected a Reasonable Person in a Similar Situation.**

53.     At all times relevant hereto, the discrimination that Plaintiff was subjected to was both "severe" and "pervasive".

54.     "The 'severe or pervasive' standard requires conduct that is sufficient 'to alter the conditions of [the employee's] employment and create an abusive working environment.'" *Hawkins v. City of Philadelphia*, 571 F. Supp. 3d 455, 463 (E.D. Pa. 2021) citing *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206 , 214-15 (3d Cir. 2017). Furthermore, whether an environment is "sufficiently hostile or abusive" is measured through a totality of the circumstances including the frequency, the severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's workplace performance. *Id.* at 215 citing *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. § 268, 270-71 (2001).

55.     Plaintiff's supervisors' and coworkers' constant discriminatory comments about women, together with their hazing of Plaintiff – all behavior which was reported to Defendant by Plaintiff – was both humiliating and served to interfere with Plaintiff's ability to perform her work when it continually treated her with less than the respect and dignity an employee deserves.

11

56.    As such, the quality and quantity of discrimination effectuated by Defendant quickly pervaded Plaintiff's entire work environment and was sufficiently "severe" in nature to satisfy the second element of Plaintiff's *prima facie* burden.

57.    At all times relevant hereto, the discrimination to which Plaintiff was subjected to was that of a kind and nature to which a reasonable person in similarly situated would have been detrimentally affected by.

**D.    *Respondeat Superior* Liability Exists Due to Mr. Cirelli's and Mr. Wahl's Overt Role in Facilitating the Discrimination.**

58.    *Respondeat Superior* liability exists in connection with Title VII claim for a hostile work environment if: (1) the tort is committed within the scope of employment (i.e., the harasser has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship. *Murphy v. Hotwire Commc'ns, LLC*, No. 19-5901, 2020 BL 168067, at *5 (E.D. Pa. May 5, 2020) citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20 , 26 (3d Cir. 1997).

59.    At all times relevant hereto, Plaintiff's supervisors and co-workers exercised organizational authority over Plaintiff and further effectuated the discriminatory conduct routinely within the work environment while Plaintiff was completing the duties of her position.

60.    Further, it is clear Defendant failed to adequately train and manage its supervisory employees and employees as to the duties incumbent within their respective positions as they began effectuating discriminatory behavior towards Plaintiff during her tenure of employment.

61.    Accordingly, *respondeat superior* liability attaches to Defendant in light of the supervisory employees' and coworkers' respective positions and for Defendant's failure to

12

properly train and manage its employees and agents in furtherance of its duty to provide a work environment free of discrimination.

62. Given Defendant's explicit knowledge of the discrimination, the resulting hostile work environment was intentional in violation of Title VII and/or the PHRA.

63. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Bobbie Bassett, seeks the damages set forth in the *ad damnum* clause and Prayer for Relief of this Complaint, *infra*.

## COUNT II
### GENDER DISCRIMINATION ON THE BASIS OF PAY IN VIOLATION OF TITLE VII AND THE PHRA
#### 42 U.S.C. § 2000e, *et seq.* and 43 P.S. § 951, *et seq.*

64. Plaintiff incorporates the allegations in the paragraphs set forth above, as if fully set forth at length herein.

65. Title VII was enacted in 1964 to prohibit discrimination in employment based on color, national origin, race, religion, and sex in response to the civil rights movement of the 1950s and 1960s. It was created to enforce constitutional rights, to confer jurisdiction upon the District Courts to provide relief against discrimination in public accommodations, and to authorize the Attorney General to institute suits to protect constitutional rights in public facilities and public education. 42 U.S.C. § 2000e, *et seq.* Further, Title VII applies to employers with 15 or more employees, including government, education, and labor organizations.

13

66.    In order to establish a *prima facie* case of discriminatory pay on the basis of gender, an employee must show: (1) they are a member of a protected class; (2) they were subjected to an adverse employment action; (3) they were qualified to perform the job; and (4) their employer treated similarly situated employees outside his protected class more favorably. *Baker v. JEA*, No. 22-11335, 2023 U.S. App. LEXIS 22644, at *11 (11th Cir. Aug. 28, 2023) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)).

**A.    Plaintiff is a member of a protected group.**

67.    At all times relevant hereto, Plaintiff was a member of a protected group insofar as Plaintiff is a biological female.

**B.    Plaintiff suffered an adverse employment action effectuated by Defendant.**

68.    During Plaintiff's tenure of employment with Defendant, she suffered the fiscal consequences of the Pay Disparity.

**C.    Plaintiff was qualified to perform the job.**

69.    Plaintiff possessed and exercised the skill, experience, and ability needed to perform the tasks and job duties of the First Position and the Second Position, as buttressed by the depth and breadth of her related education and experience.

70.    Additionally, Plaintiff was sufficiently skilled in the areas of comprehension, communication, interpretation, and analysis.  Additionally, Plaintiff possessed the physical stamina, health, and wellbeing to perform any manual labor tasks associated with the First Position and the Second Position.

**D.    Plaintiff was disparately treated under circumstances that support an inference of unlawful discrimination.**

71.    Defendant disparately treated Plaintiff by and through the Pay Disparity.

72.    Specifically, Defendant compensated Plaintiff's similarly situated male colleagues at a higher base rate of pay than Plaintiff.  Further, Defendant contemporaneously assigned Plaintiff the duties of the First Position and the Second Position, thereby forcing her to essentially work two jobs.

73.    As outlined above, Mr. Wahl, Mr. Cirelli, and others employed at the Facility, made offensive and discriminatorily charged remarks towards Plaintiff demonstrative of their gender bias directed towards females.  In the course of the Pay Disparity, Defendant exercised this bias in its conduct directed towards Plaintiff.

74.    Taken together, it is clear that Plaintiff was treated worse than her male peers because and under circumstances that support the inference that Plaintiff's gender was a motivating fact in this disparate treatment.

75.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Bobbie Bassett, seeks the damages set forth in the *ad damnum* clause and Request for Relief of this Complaint, *infra*.

## COUNT III
### RETALIATION ON THE BASIS OF PROTECTED ACTIVITY
### IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. 2000, *et seq.* and 43 P.S. § 951, *et seq.*

76.    Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

15

77.    Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter..." 42 U.S.C. § 2000e-3(a).

78.    To establish a claim for retaliation on the basis of engaging in a protected activity, a plaintiff must show "(1) [that he engaged in a] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir.2007) (quoting *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567–68 (3d Cir.2002)): *see also Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022).

**A.    Plaintiff Engaged in a "Protected Activity" Pursuant to Title VII.**

79.    As set forth above, Plaintiff complained of gender discrimination to Mr. Wahl and submitted the EEO Complaint.  As such, Plaintiff readily satisfied the first prong of her *prima facie* case.

**B.    Plaintiff Suffered an Adverse Action by Defendant.**

80.    Shortly subsequent to the foregoing, Plaintiff suffered the adverse employment action when she (i) received a premature (within historical context), downgraded EPR; (ii) was isolated from her colleagues; and (iii) was harassed by her supervisors and coworkers.

**C.    A Causal Connection Exists Between Plaintiff's Protected Activity and Defendant's Adverse Action.**

81.    A causal connection readily exists between Plaintiff's protected activity and Defendant's adverse action.

82.    A short time following Plaintiff's complaints set forth above, Plaintiff (i) received a premature (within historical context), downgraded EPR; (ii) was isolated from her colleagues;

16

and (iii) was harassed by her supervisors and coworkers.

83.    Given the close temporal proximity between the time when Plaintiff first engaged in protected activity and Defendant's adverse action, a natural and sustainable inference arises that Plaintiff was subjected to retaliatory adverse action.

**D.    Plaintiff is Entitled to Pursue Punitive Damages as Defendant Discriminated Against Her with Malice and Reckless Indifference to Her Federally Protected Rights.**

84.    As delineated more thoroughly above, Plaintiff is entitled to pursue punitive damages for violations of her federally protected rights.  At all times material, Defendant acted with the knowledge that it was unlawful to retaliate against individuals who engaged in various "protected activities" authorized by Title VII.

85.    In engaging in adverse action against Plaintiff in retaliation for her exercise of her statutorily imbued abilities under Title VII, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

86.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Bobbie Bassett, seeks the damages set forth in the *Ad Damnum* clause and Prayer for Relief of this Complaint, *infra*.

17

## COUNT IV
## UNCORRECTED HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF THE ADA AND THE PHRA
### 42 U.S.C. § 12101, *et seq.*; 43 P.S. § 951, *et seq.*

87. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

88. To establish a hostile work environment claim under the ADA, an employee must show that "(1) the employee suffered intentional discrimination, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." See *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

89. The 3rd Circuit has also noted that severe or pervasive is the correct standard under which apply a totality of the circumstances approach in examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

**A.    Plaintiff Suffered Intentional Discrimination.**

90. As stated above, Plaintiff is a disabled individual under the purview of the ADA in that she possesses the Disabilities.

91. Throughout the course of Plaintiff's employment, Plaintiff was treated less favorably than her non-disabled coworkers with regards to being subjected to numerous humiliating derogatory comments from her supervisors and coworkers.

18

92.     Furthermore, when Plaintiff complained to Defendant's agent, Mr. Wahl, about the discriminatory behavior set forth above, Mr. Wahl essentially blew off her comments and proceeded to take no action, investigatory or otherwise.

**B.     The Discrimination Plaintiff Endured was Sufficiently Severe and Pervasive Within the Work Environment and Would Have Detrimentally Affected a Reasonable Person in a Similar Situation.**

93.     At all times relevant hereto, the discrimination that Plaintiff was subjected to was both "severe" and "pervasive".

94.     "The 'severe or pervasive' standard requires conduct that is sufficient 'to alter the conditions of [the employee's] employment and create an abusive working environment.'" *Hawkins v. City of Philadelphia*, 571 F. Supp. 3d 455, 463 (E.D. Pa. 2021) citing *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206 , 214-15 (3d Cir. 2017). Furthermore, whether an environment is "sufficiently hostile or abusive" is measured through a totality of the circumstances including the frequency, the severity, whether it is physically threating or humiliating, and whether it unreasonably interferes with an employee's workplace performance. *Id.* at 215 citing *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. § 268, 270-71 (2001).

95.     Plaintiff's supervisors' and coworkers' constant discriminatory comments about disabled individuals –behavior which was reported to Defendant by Plaintiff – was both humiliating and served to interfere with Plaintiff's ability to perform her work when it continually treated her with less than the respect and dignity an employee deserves.

96.     As such, the quality and quantity of discrimination effectuated by Defendant quickly pervaded Plaintiff's entire work environment and was sufficiently "severe" in nature to satisfy the second element of Plaintiff's *prima facie* burden.

97.    At all times relevant hereto, the discrimination to which Plaintiff was subjected to was that of a kind and nature to which a reasonable person in similarly situated would have been detrimentally affected by.

**C.    *Respondeat Superior* Liability Exists Due to Ms. Black's Overt Role in Facilitating the Discrimination.**

98.    *Respondeat Superior* liability exists in connection with an ADA claim for a hostile work environment if: (1) the tort is committed within the scope of employment (i.e., the harasser has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship. *Murphy v. Hotwire Commc'ns, LLC*, No. 19-5901, 2020 BL 168067, at *5 (E.D. Pa. May 5, 2020) citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20 , 26 (3d Cir. 1997).

99.    At all times relevant hereto, Plaintiff's supervisors and coworkers exercised organizational authority over Plaintiff and further effectuated the discriminatory conduct routinely within the work environment while Plaintiff was completing the duties of her position.

100.    Further, it is clear Defendant failed to adequately train and manage its supervisory employees and employees as to the duties incumbent within their respective positions as they began effectuating discriminatory behavior towards Plaintiff during her tenure of employment.

101.    Accordingly, *respondeat superior* liability attaches to Defendant in light of the supervisory employees' and coworkers' respective positions and for Defendant's failure to properly train and manage its employees and agents in furtherance of its duty to provide a work environment free of discrimination.

20

102.    Given Defendant's explicit knowledge of the discrimination, the resulting hostile work environment was intentional in violation of the ADA and/or the PHRA.

103.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Bobbie Bassett, seeks the damages set forth in the *Ad Damnum* clause and Prayer for Relief in this Complaint, *infra*.

## COUNT V
### RETALIATION ON THE BASIS OF PROTECTED ACTIVITY IN VIOLATION OF THE ADA AND PHRA
### 42 U.S.C. § 1201, *et seq.*; 43 P.S. § 951, *et seq.*

104.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

105.    The ADA prohibits employers from retaliating against employees.  42 U.S.C. §12203(a).  Specifically, the ADA states that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id.*

106.    Notably, the case law has held that, in and of itself, retaliation is a separate and distinct unlawful practice of discrimination and, thus, is actionable in its own right and without regard to other instances of discrimination. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163-64 (3d Cir. 2013); see *Mercer*, 26 F. Supp.3d at 440; 28 C.F.R. §§ 35.134.

107.    To establish a claim for retaliation, Plaintiff must prove: "(1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected

21

activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

## A. Plaintiff Engaged in a "Protected Activity" Pursuant to the ADA.

108.    As set forth above, Plaintiff complained of disability discrimination to Mr. Wahl and submitted the EEO Complaint.  As such, Plaintiff readily satisfied the first prong of her *prima facie* case.

## B. Plaintiff Suffered an Adverse Action by Defendant.

109.    Shortly subsequent to the foregoing, Plaintiff suffered the adverse employment action when she (i) received a premature (within historical context), downgraded EPR; (ii) was isolated from her colleagues; and (iii) was harassed by her supervisors and coworkers.

## C. A Causal Connection Exists Between Plaintiff's Protected Activity and Defendant's Adverse Action.

110.    A causal connection readily exists between Plaintiff's protected activity and Defendant's adverse action.

111.    A short time following Plaintiff's complaints set forth above, Plaintiff (i) received a premature (within historical context), downgraded EPR; (ii) was isolated from her colleagues; and (iii) was harassed by her supervisors and coworkers.

112.    Given the close temporal proximity between the time when Plaintiff first engaged in protected activity and Defendant's adverse action, a natural and sustainable inference arises that Plaintiff was subjected to retaliatory adverse action.

**D.    Plaintiff is Entitled to Pursue Punitive Damages as Defendant Discriminated Against Her with Malice and Reckless Indifference to Her Federally Protected Rights.**

113.    As delineated more thoroughly above, Plaintiff is entitled to pursue punitive damages for violations of her federally protected rights.  At all times material, Defendant acted with the knowledge that it was unlawful to retaliate against individuals who engaged in various "protected activities" authorized by the ADA.

114.    In engaging in adverse action against Plaintiff in retaliation for her exercise of her statutorily imbued abilities under the ADA, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

115.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Bobbie Bassett, seeks the damages set forth in the *Ad Damnum* clause and Prayer for Relief in this Complaint, *infra*.

### *AD DAMNUM* CLAUSE AND PRAYER FOR RELIEF

Plaintiff, Bobbie Bassett, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant, The Pennsylvania Department of Corrections, and prays for relief as follows:

1.    Declare and find that Defendant committed one or more of the following acts:

    i.    Violated Title VII and/or the PHRA by creating and sustaining a hostile work environment on the basis of Plaintiff's gender;

23

    ii.    Violated Title VII and/or the PHRA by discriminatorily compensating Plaintiff on the basis of her gender;

    iii.    Violated Title VII and/or the PHRA by retaliating against Plaintiff due to her complaints of gender discrimination;

    iv.    Violated the ADA and/or the PHRA by creating and sustaining a hostile work environment on the basis of Plaintiff's Disabilities; and

    v.    Violated the ADA by retaliating against Plaintiff due to her complaints of disability discrimination;

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3. Award punitive damages to Plaintiff in an amount to be determined at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature;

4. Award equitable relief in form of back pay and front pay;

5. Award liquidated damages to Plaintiff in an amount to be determined at trial;

6. Award reasonable attorney fees and costs to Plaintiff incurred in the prosecution of this suit; and/or

7. Award pre-judgment and continuing interest as calculated by the Court.

**TRIAL BY JURY IS DEMANDED.**

24

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: November 21, 2024

By: */s/ Erik M. Yurkovich*
    Erik M. Yurkovich (Pa. I.D. No. 83432)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.8057
Fax: 412.910.7510
erik@workersrightslawgroup.com

*Counsel for Plaintiff, Bobbie Bassett*

25

## VERIFICATION

I, Bobbie Bassett, hereby certify that the statements in the foregoing Complaint in Civil Action are true and correct to the best of my knowledge, information, and belief. This verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false statements, I may be subject to criminal penalties.

11 / 20 / 2024

Date

Bobbie Bassett

Doc ID: 6038bde4e5fe6e521b9f6f077c842de5d761ee90