**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOBBIE BASSETT,** | : | **No. 3:24cv2024** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **THE PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiff Bobbie Bassett asserts claims against her employer, Defendant

Pennsylvania Department of Corrections, under the Americans with Disabilities

Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and the Pennsylvania

Human Relations Act, 73 PA. STAT. §§ 951, *et seq.* ("PHRA").  Before the court is

the defendant's motion to dismiss for failure to state a claim filed under Federal

Rule of Civil Procedure 12(b)(6).

**Background**

This matter involves alleged employment discrimination within the

Department of Corrections at State Correctional Institution, Waymart ("SCI-

Waymart"). [1]  Bassett serves as the Deputy Superintendent of Forensic Services

---

[1] These brief background facts are derived from plaintiff's amended complaint and the exhibits
attached thereto.  At this stage of the proceedings, the court must accept all factual allegations

at SCI-Waymart, while also performing the duties of the Deputy Superintendent of Centralized Services. (Doc. 8, Am. Compl. ¶¶ 10, 17, 27).  According to Bassett, she was the only female among the executive staff at the prison at the time of the conduct alleged in her amended complaint. Id. ¶ 18.

According to Bassett, the male members of the executive staff created a hostile work environment on the basis of sex and disability that forced her to take an extended leave of absence at work.  She alleges that the Superintendent of SCI-Waymart, Mark Wahl, and two other Deputy Superintendents, Jim Cirelli and Joe Grillo perpetuated the hostile work environment through name-calling and ostracization.

Bassett has been employed by the defendant for approximately 20 years. She alleges that hostilities began in January 2022 when Wahl became the superintendent of SCI-Waymart.  Thereafter, Bassett alleges that Wahl, Cirello, and Grillo began referring to the plaintiff as "Deputy Mommy" on a daily basis. Id. ¶ 21.  Over Bassett's continuing objections, Wahl, Grillo, and Cirelli continued calling Bassett this name amongst other staff members and in front of inmates for more than two years. Id. ¶ 22.

---

in the amended complaint as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  The court makes no determination, however, as to the ultimate veracity of these assertions.

To support disability-related hostile work environment claims, Bassett alleges that, in 2009, while employed with defendant, a physician diagnosed her with post-traumatic stress disorder ("PTSD") and generalized anxiety disorder. Id. ¶¶ 3, 16. Additionally, as the Deputy Superintendent of Forensic Services, Bassett's responsibilities involved oversight of inmates receiving inpatient psychiatric treatment. Id. ¶¶ 23–24. Inpatient inmates wear blue uniforms to differentiate them from other individuals incarcerated at SCI-Waymart. Id. ¶ 24. Wahl, Grillo, and Cirelli allegedly referred to inpatient inmates with mental health disabilities as "blueberries," "retards," "tards," "animals," "quacks," "kooks," and "halfwits," while in plaintiff's presence and with the express purpose of upsetting her. Id. During meetings that Bassett had with other executive staff, Deputy Superintendent Cirelli allegedly referred to plaintiff by stating, on several occasions: "She belongs with the nuts 'cause she is one." Id.

Instead of reprimanding Cirelli, Superintendent Wahl laughed and mocked Bassett and told Cirelli not to say things like that because the plaintiff might file a complaint with the department's Equal Employment Opportunity office ("EEO"). Id. At some point, Bassett met with Superintendent Wahl face-to-face to address her complaints of discrimination. Id. Wahl allegedly yelled and told the plaintiff to "[g]et the fuck out of [his] office[.]" Id. ¶ 19.

Subsequently, Bassett filed an EEO complaint on August 4, 2023. Id.  On August 10, 2023, the Department of Corrections summoned plaintiff to its central office in Mechanicsburg.  Id. ¶ 20.  Plaintiff met with defendant's head of human resources ("HR"), regional deputy secretary, and executive deputy secretary. Id. On or about that date, the regional deputy secretary visited SCI-Waymart and directed Superintendent Wahl to move Bassett's office from a segregated location to a location next to the rest of the prison's executive staff. Id. ¶ 26. According to plaintiff, Wahl refused to do so.  Id.

Around that same time, Deputy Superintendent Cirelli abruptly retired. Id. ¶ 27.  Consequently, Deputy Superintendent Grillo transferred into Cirelli's former position. Id.  On August 25, 2023, Superintendent Wahl ordered Bassett to take on the duties and responsibilities of Grillo's former position as Deputy Superintendent of Centralized Services. Id.  Bassett's workload doubled, but she received no additional pay from the defendant. Id. ¶¶ 27–28.  Plaintiff thus asserts that Wahl's personnel directive was in retaliation for her making the EEO complaint. Id. ¶ 28.  Bassett also asserts that Wahl's personnel directive resulted in unlawful wage discrimination since she received pay comparable to Grillo who performed only one deputy superintendent role, while she was ordered to perform two. Id.

According to Bassett, her EEO complaint did not conclude to her satisfaction. Id. ¶ 30.  SCI-Waymart's HR director summoned Bassett to her office in January 2024 and recommended to plaintiff that she file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Id.  The HR director also disclosed that the regional deputy secretary recommended to Superintendent Wahl that he terminate Grillo and Cirelli, but Wahl did not do so. Id.  The HR director further advised that Wahl was placed on notice of the recommendation that Bassett file a charge with the EEOC. Id. ¶ 31.  Based on the HR director's advice, Bassett contacted the EEOC in January 2024 and filed a *pro se* charge of discrimination on February 20, 2024. Id. ¶ 32.

On January 22, 2024, Superintendent Wahl conducted an employee progress report ("EPR") with Bassett. Id. ¶ 33.  Wahl assessed Bassett's performance as "satisfactory," whereas plaintiff had received nothing less than "commendable" and "outstanding" in her prior reviews. Id.  According to plaintiff, this EPR equated to a negative performance review, which impaired her opportunities for future promotions. Id. ¶¶ 33–34.  While delivering the EPR, Wahl also allegedly stated to Bassett: "I know you are a single mom, but you need to get your priorities straight.  The DOC comes first[,] not the kids." Id. ¶ 35. Bassett asserts that Wahl retaliated against her with the negative EPR as a result of plaintiff filing the EEO complaint. Id. ¶ 33.

According to Bassett, Superintendent Wahl also admitted that he had an HR representative attend the EPR session, unlike past performance reviews, because he knew plaintiff would report the EPR as retaliation. Id. ¶ 36. Furthermore, Bassett takes issue with at least one statement in the EPR regarding her absence at meetings. Id. ¶ 38.  Per the plaintiff, such an allegation regarding attendance at meetings is disingenuous due to her increased responsibilities performing the roles of two deputy superintendents. Id.  Bassett also contends that Superintendent Wahl would not invite her to meetings and, when questioned, told plaintiff: "I forget about you." Id. ¶ 38.

Bassett alleges that she has been on leave from the Department of Corrections since July 2024 due to work-related emotional distress stemming from the conduct of Superintendent Wahl and others at SCI-Waymart, including the name-calling referenced above.  Id. ¶ 40.  According to the plaintiff, her emotional distress involves physical manifestations, including migraine headaches, gastroesophageal reflux disease, and temporomandibular joint disorder. Id.

Bassett initiated this action on November 21, 2024. (Doc. 1).  She filed an amended complaint on January 31, 2025.  (Doc. 8).  Her amended complaint contains five (5) counts:  Count I – uncorrected hostile work environment in violation of Title VII and the PHRA; Count II – gender-based pay discrimination in

violation of Title VII and the PHRA; <u>Count III</u> – retaliation in violation of Title VII and the PHRA; <u>Count IV</u> – uncorrected hostile work environment in violation of the ADA and the PHRA; and <u>Count V</u> – retaliation in violation of the ADA and the PHRA. <u>Id.</u> at ¶¶ 41-104.

Defendant responded to the amended complaint with the instant motion to dismiss seeking to dismiss all claims with prejudice. (Doc. 10).  Having been fully briefed, the motion to dismiss is ripe for disposition.

**Jurisdiction**

This matter involves claims filed pursuant to the ADA and Title VII.  Thus, the court has federal question jurisdiction. <u>See</u> 28 U.S.C. § 1331.  Furthermore, the court has supplemental jurisdiction over plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367(a).

**Standard of Review**

Defendant has filed a motion to dismiss for failure to state a claim.  To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " <u>Doe v. Princeton Univ.</u>, 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)).  This means a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570

7

(2007)).  A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process.  The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted).  The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted). The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. Id. (citations omitted).

8

**Analysis**

**1. Plaintiff's Hostile Work Environment Claims**

Bassett contends that she experienced a hostile work environment based on her sex and her disability.[2]  To succeed on a hostile work environment claim under Title VII, the plaintiff must demonstrate that: 1) she suffered intentional discrimination because of her sex; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would detrimentally affect a reasonable person in like circumstances; and 5) the existence of *respondeat superior* liability. See Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (citations omitted).  As articulated, the elements of an ADA hostile work environment claim require a similar set of proofs, that is,

---

[2] Under Title VII, "it shall be an unlawful employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (citation and internal quotation marks omitted).

The ADA states that: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Without deciding conclusively that a cause of action for a hostile work environment exists under the ADA, the Third Circuit Court of Appeals has applied Title VII case law to a disability-based claim because the ADA and Title VII both serve to prohibit discrimination against members of certain classes. See Walton v. Mental Health Ass'n. of Se. Pennsylvania, 168 F.3d 661, 667 (3d Cir. 1999).

a plaintiff must establish that: 1) she is a qualified individual with a disability under the ADA; 2) she was subject to unwelcome harassment; 3) the harassment was based on her disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) that her employer knew or should have known of the harassment and failed to take prompt effective remedial action. Walton, 168 F.3d at 667; Woods v. AstraZeneca Pharms., L.P., 659 F. Supp. 3d 512, 544 (M.D. Pa. 2023).

Defendant contends in its motion to dismiss that Bassett's allegations do not advance the required element of severe or pervasive harassment. To meet that element, a plaintiff must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " Morgan, 536 U.S. at 116 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). When evaluating whether harassment was severe or pervasive, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " Mandel, 706 F.3d at 168 (quoting Harris, 510 U.S. at 23). "[T]he

resolution of that question is context-specific," <u>Castleberry v. STI Grp.</u>, 863 F.3d 259, 264 (3d Cir. 2017), with consideration of the overall scenario, <u>see</u> <u>Qin v. Vertex, Inc.</u>, 100 F.4th 458, 471 (3d Cir. 2024).  Additionally, " 'conduct must be extreme' to satisfy this standard, so 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' are inadequate." <u>Mandel</u>, 706 F.3d at 168 (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)). Conduct must also be severe or pervasive enough to create an "objectively hostile or abusive work environment," that is, "an environment that a reasonable person would find hostile or abusive." <u>Harris</u>, 510 U.S. at 21.

### A. Hostile Work Environment Based on Sex

Count I advances a claim for an uncorrected hostile work environment in violation of Title VII and the PHRA.  As for the supporting allegations, Bassett contends that the superintendent of SCI-Waymart and two deputy superintendents referred to Bassett as "Deputy Mommy" every day for more than two years. (Doc. 8, Am. Compl. ¶¶ 21–24).  In its motion, defendant argues that such name-calling amounts to a "petty slight," not the extreme conduct necessary to maintain a hostile work environment claim when viewed objectively. (Doc. 11, Def. Br. in Supp. at 5–6).  For the reasons set forth below, the court disagrees with the defendant's assessment of Bassett's allegations.

Whether the work environment "would reasonably be perceived, and is perceived, as hostile or abusive…is not, and by its nature cannot be, a mathematically precise test." Harris, 510 U.S. at 22. "In considering the severity of the discriminatory conduct," the court looks to "whether the conduct creates 'an attitude of prejudice that injects hostility and abuse into the working environment.' " Qin, 100 F.4th at 471 (quoting Ali v. Woodbridge Twp. Sch. Dist., 957 F.3d 174, 182 (3d Cir. 2020) (additional citation omitted)).  The court also weighs whether the conduct was "physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

Regarding the nickname "Deputy Mommy" itself, Bassett alleges that she was both a deputy superintendent and a mother. (Doc. 8, Am. Compl. ¶¶ 17, 35). But Bassett alleges that male leadership at SCI-Waymart repeatedly referred to her using that name in front of other staff members and prisoners. Id. ¶ 22.  Such averments allow for inferences that the alleged conduct undermined plaintiff's role within SCI-Waymart and impacted her authority over the inmates at the correctional institution, particularly with any male offenders who overheard such use of the name.  See id. ¶ 48.

Bassett further alleges that, in addition to calling her "Deputy Mommy," Superintendent Wahl: 1) dismissed plaintiff's informal complaint of discrimination

by cursing her out of his office; 2) refused a recommendation to move Bassett's office from a segregated location; and 3) refused a recommendation to terminate deputy superintendents who were also involved in the name-calling. (Doc. 8, Am. Compl. ¶¶ 19, 26, 30).  Furthermore, the amended complaint sets forth that Superintendent Wahl did not invite Bassett to meetings, held her absences against her in a performance review, and told her: "I forget about you." Id. ¶ 38. These allegations advance that leadership at SCI-Waymart ostracized plaintiff because she is a woman. See id. ¶ 39.  They support an overall picture that Bassett encountered more than "petty slights" in the workplace.

In considering the severity or pervasiveness of harassment, the court must also look to the frequency of the alleged conduct in the context of the case. Qin, 100 F.4th at 471.  Bassett does not allege that the use of the name "Deputy Mommy" was a one-off event or that it occurred a handful of times over a long period.  Assuming the facts of the amended complaint as true, the name-calling continued on a daily basis for over two years.

The above allegations thus distinguish this action from the cases relied upon by defendant in its brief.  Specifically, the unreported decision of the Second Circuit relied upon by defendant, Gittens-Bridges v. City of New York, No. 22-810, 2023 WL 8825342, (2d Cir. Dec. 21, 2023), is unpersuasive.  In Gittens-Bridges, a supervisor called the plaintiff "mommy" on one occasion. Id. at

*2.  Unlike Bassett, the plaintiff in <u>Gittens-Bridges</u> proceeded with claims under the Age Discrimination in Employment Act.  <u>Id.</u>  The Second Circuit determined that this one incident could not support an age-based hostile work environment claim on a motion for summary judgment.  <u>Id.</u>

Additionally, in <u>Ali</u>, referenced above, the Third Circuit reviewed facts at the summary judgment stage that a school principal: 1) greeted the plaintiff, a teacher, on two occasions with "Hey Arabia Nights" and "Hey, Big Egypt;" 2) referred to the plaintiff as "Mufasa" or "Mufasa Ali" based on the plaintiff's middle name of Mostafa and in reference to a character in The Lion King; and 3) made a comment to the plaintiff about computers in Egypt.  957 F.3d at 182. Nonetheless, because there was no evidence that the school principal made these comments in front of other staff members and they were not unambiguous racial epithets, the Third Circuit determined that such comments were not severe enough to maintain a race-based hostile work environment claim.  <u>Id.</u>  Moreover, the court also concluded that the above comments from a supervisor represented "isolated incidents" and determined that they were not so pervasive as to alter the working environment.  <u>Id.</u>

This case presents stronger allegations in terms of frequency and severity at the motion to dismiss stage than the evidence presented in <u>Ali</u> and <u>Gittens-</u>

<u>Bridges</u> at a later procedural posture. Thus, defendant's motion to dismiss Bassett's hostile work environment claim will be denied.

### B. Disability-Based Hostile Work Environment Claim

Additionally, Bassett alleges that Superintendent Wahl, Deputy Superintendent Cirelli, and Deputy Superintendent Grillo also created a hostile work environment based on the plaintiff's status as a qualified individual with a disability. In moving to dismiss, defendant argues that Bassett's allegations are either too vague, not direct enough, or not severe enough to proceed. (Doc. 11, Def. Br. in Supp. at 6–7). The court disagrees with the defendant.

At this posture, the court must construe the amended complaint in the light most favorable to Bassett and draw all reasonable inferences in her favor. That includes allegations regarding context.[3] Upon review, Bassett's amended

---

[3] Courts are generally not in a good position to evaluate the totality of the circumstances when a defendant moves to dismiss a hostile work environment claim. See <u>Castleberry</u>, 863 F.3d at 266 (noting under the facts of that case that whether "allegations are true and whether they amount to 'pervasiveness' are questions to be answered after discovery"). To that end, it is sometimes difficult to appreciate the full context of facts alleged in a pleading. See <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 270 (2001) ("Workplace conduct is not measured in isolation[.]"); <u>see also</u> <u>Sryfi v. Trs. of Univ. of Pennsylvania</u>, No. CV 24-567, 2025 WL 590337, at *10 (E.D. Pa. Feb. 24, 2025) ("Even if…additional details are needed to conclusively assess the totality of the circumstances, the very fact-intensive nature of this inquiry makes it ill-suited to dismissal at this early juncture."). Thus, other judges in this circuit have expressed reluctance to dismiss hostile work environment claims where a defendant challenges whether the severe or pervasive element has been met. See <u>Booker v. Nat'l R.R. Passenger Corp.</u>, 880 F. Supp. 2d 575, 582 (E.D. Pa. 2012) (citing <u>Long v. Pizza Hut (Store # 635008)</u>, No. 03–0738, 2003 WL 23019186, at *4 (W.D.Pa. Nov. 5, 2003)); <u>see also</u> <u>Bookhart v. Tri-Cnty. Opportunities Indus. Ctrs., Inc.</u>, No. 1:25-CV-00334, 2025 WL 1439574, at *5 (M.D. Pa. May 19, 2025) (citing <u>D.F. and W.F. v. CMBK Resort Ops., LLC</u>, No. 3:23-cv-00517, 2024 WL 3605940, at *4 (M.D. Pa. July 31, 2024); <u>Fedder v. Bloomsburg Univ. of Pennsylvania</u>, No.

complaint defines her disabilities with reference to her diagnoses of PTSD and generalized anxiety disorder and the impacts they have on daily life activities such as concentrating and caring for herself. (Doc. 8, Am. Compl. ¶¶ 3, 5). Bassett also alleges that her role as Deputy Superintendent of Forensic Services included oversight of state prisoners being treated for mental health conditions in an inpatient setting. Id. ¶¶ 17, 22.  Further, per the plaintiff, Superintendent Wahl, Deputy Superintendent Cirelli, and Deputy Superintendent Grillo regularly referred to these inmates using various derogatory terms for individuals with intellectual disabilities. Id.  Superintendent Wahl, Deputy Superintendent Grillo, and Deputy Superintendent Cirelli also referred to these individuals as "blueberries," i.e., fruits with the same color as the garments issued to identify them within the state correctional facility. Id. ¶ 24.

According to Bassett, her colleagues at SCI-Waymart told her that she "belonged with the blueberries" on a daily basis. Id. ¶ 39 (quotation marks and capitalization removed).  Additionally, as alleged, Deputy Superintendent Cirelli stated in plaintiff's presence on several occasions: "She belongs with the nuts 'cause she is one." Id. ¶ 24.  These comments ostensibly came during meetings with other members of SCI-Waymart's executive staff, including Superintendent

---

4:23-cv-01678, 2024 WL 580552, at *3 (M.D. Pa. Feb. 13, 2024)); Moore v. Lower Frederick Twp., No. CV 20-5920, 2022 WL 657068, at *11 (E.D. Pa. Mar. 4, 2022); Ingram v. Vanguard Grp., Inc., No. CIV.A. 14-3674, 2015 WL 4394274, at *19 (E.D. Pa. July 17, 2015).

Wahl. Id.  In response to these alleged marginalizing comments by Cirelli, Superintendent Wahl laughed and mocked the plaintiff, referencing that she might file an EEO complaint. Id.

The above allegations are supplemented by averments addressed in the court's analysis of Bassett's sex-based hostile work environment claim, such as Superintendent Wahl's other conduct regarding the plaintiff.  If true, such ostracizing conduct would advance that Bassett's role in overseeing forensic psychiatric treatment at SCI Waymart was minimized or even undermined because of her own disabilities, even if disparaging remarks related to inmates with mental health conditions were not always directed at the plaintiff.  Subject to further testing through the litigation process, Bassett's alleged picture of her workplace would reasonably be perceived as hostile or abusive based on the plaintiff's disabilities.  Consequently, the hostile work environment claims in Count I (Title VII/PHRA) and Count IV (ADA/PHRA) survive defendant's motion to dismiss.

## 2. Plaintiff's Wage Discrimination Claim

In Count II of the amended complaint, Bassett asserts a claim for gender discrimination under Title VII and the PHRA centering on the differences in wages being paid to deputy superintendents at SCI-Waymart.[4]  As alleged,

---

[4] Bassett does not assert any claim pursuant to the Equal Pay Act.

Superintendent Wahl ordered Bassett to serve in two deputy superintendent roles after the abrupt retirement of Cirelli, whereas Deputy Superintendent Grillo was moved into Cirelli's former position without additional responsibilities. (Doc. 8, Am. Compl. ¶ 27).  Yet, Bassett contends that she and Grillo were paid comparable wages and that, as a result, defendant's employment decision amounted to a plaintiff's denial of equal pay for equal work. Id. ¶¶ 28, 61.

The amended complaint does not advance any direct evidence that the employment decision was made on the basis of sex or gender.  The court thus assesses Bassett's allegations using the three-part, burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 340 (2020).  At the first step, the court asks whether plaintiff has stated a *prima facie* case of discrimination; if so, the burden shifts to the defendant to advance a legitimate, non-discriminatory reason for its conduct; and finally, the plaintiff receives an opportunity to demonstrate whether that proffered reason is pretext for discrimination. See Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015), abrogated on other grounds by Muldrow v. City of St. Louis, Missouri, 601 U.S. 346, 353–356 (2024); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

To state a *prima facie* case of sex discrimination, plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was qualified for the position;

(3) suffered an adverse employment action; and (4) that the action occurred under circumstances that could give rise to an inference of intentional discrimination. See Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013) (citing Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)).

In its motion to dismiss, the Department of Corrections challenges whether Grillo is a valid comparator since Bassett possessed a different job title. (Doc. 11, Def. Br. in Supp. at 7–8).  Defendant's arguments thus target the fourth element of Bassett's *prima facie* case, that is, whether there are circumstances alleged giving rise to an inference of intentional discrimination.  Defendant's arguments also appear to challenge Bassett's pretext evidence prior to an articulation of any legitimate, non-discriminatory reasons for its employment decisions regarding the plaintiff.[5]

Under the law, "comparator employees need not be identical but must be similarly situated in 'all material respects.' " Qin, 100 F.4th at 474 (citing In re Trib. Media Co., 902 F.3d 384, 403 (3d Cir. 2018) (further citations omitted). "Factors that are relevant include whether the employees dealt with the same

---

[5] A plaintiff establishes pretext by pointing to direct or circumstantial evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. "The plaintiff can satisfy the second prong by demonstrating, among other things, that 'the employer treated other, similarly situated persons not of [her] protected class more favorably.' " Qin, 100 F.4th at, 475 (quoting Fuentes, 32 F.3d at 765).

supervisor, were subject to the same standards, and shared similar job responsibilities." Id. (citations omitted).  "An employee who holds a different job title or works in a different department is not similarly situated." Id. (citing Mandel, 706 A.2d at 170).[6]  However, like the hostile work environment claims discussed above, a determination into whether an individual might qualify as a valid comparator "requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004) (citing Pivirotto, 191 F.3d at 357 (3d Cir. 1999)).

After careful consideration, discovery is necessary to fully appreciate any similarities or differences between Bassett and Grillo's job duties and responsibilities as deputy superintendents at SCI-Waymart.  As alleged, Grillo shifted into Cirelli's position and Bassett took on the responsibilities of Grillo's previous position.  This alleged lateral movement of deputy superintendents and

---

[6] Qin cited an earlier precedential opinion, Mandel, for the proposition that: "An employee who holds a different job title…is not similarly situated." 100 F.4th at 474 (citing Mandel, 706 A.2d at 170).  Reference to that page in Mandel reflects that the proffered comparator in that case held "a different position and had a higher level of education." 706 A.2d at 170.  Thus, the Third Circuit concluded: "Although the identification of a similarly situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably, may give rise to an inference of unlawful discrimination, an employee who holds a *different job in a different department* is not similarly situated." Id. (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 358–59 (3d Cir. 1999) (emphasis added)).  In turn, Pivirotto involved a former "director of North American sales" offering improper comparisons to the company's in-house counsel. 191 F.3d at 350, 358.

shifting responsibilities make it at least plausible that that Bassett and Grillo were comparable in all material respects.  As for any issue with Bassett's potential comparator evidence because Deputy Superintendent Grillo had a different specific job title, that discussion is best reserved for another day after the Department of Corrections has filed its answer, advanced a legitimate, non-discriminatory reason for any differences in pay, and filed a motion for summary judgment.  Additionally, as discussed above, Bassett has successfully pled a hostile work environment claim on the basis of sex.  Both Deputy Superintendent Grillo, the proposed comparator, and Superintendent Wahl, the ostensible common supervisor, are alleged to have helped create that hostile work environment.  These allegations blend into Bassett's claim for wage discrimination.  The plaintiff has thus offered more than just comparator allegations to clear the "low bar for establishing a *prima facie* case of employment discrimination." See <u>Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.</u>, 470 F.3d 535, 539 (3d Cir. 2006) (citation omitted). Consequently, the defendant's motion to dismiss Bassett's wage discrimination claim will be denied.

### 3.  Plaintiff's Retaliation Claims

Finally, Bassett's amended complaint asserts claims for retaliation in violation of Title VII and the PHRA (Count III) and the ADA and the PHRA (Count

V).  Retaliation claims are cognizable under the ADA and Title VII and are also evaluated using the three-step burden-shifting framework established in McDonnell Douglas. Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022).  Under the first step of that framework, a plaintiff establishes a *prima facie* case by showing: 1) that she engaged in protected employee activity; 2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and 3) a causal connection between the employee's protected activity and the employer's adverse action. Id. (quoting Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015)) (cleaned up).

Defendant challenges Bassett's retaliation allegations from several different angles.  The best way to address all of these arguments is to correlate them with two different events provided in the amended complaint: 1) the August 25, 2023 decision by Superintendent Wahl to have plaintiff assume the duties, responsibilities, and workload of Deputy Superintendent of Forensic Services and Deputy Superintendent of Centralized Services (hereinafter "double duty decision"); and 2) the January 22, 2024 performance review, or EPR, where Bassett received a "satisfactory" evaluation from Superintendent Wahl (hereinafter "satisfactory EPR").

As for the August 2023 double duty decision, defendant seeks dismissal due to Bassett's failure to allege that Superintendent Wahl knew about an EEO complaint that the plaintiff filed approximately three weeks earlier. Defendant also argues that the amended complaint does not plausibly allege the requisite but-for causation between the protected activity and the adverse action because, as specifically alleged, the increase in duties was due to Deputy Superintendent Cirelli's retirement. Per defendant, Bassett has thus provided a valid, lawful reason for the double duty decision and pled herself out of court.

Both arguments are unpersuasive. Regarding Superintendent Wahl's knowledge of Bassett's EEO complaint at the time of the double duty decision, plaintiff cannot be expected to have full insight into Wahl's knowledge at this stage of the litigation. Furthermore, plaintiff has alleged that she pursued an EEO complaint after Wahl rejected her face-to-face complaints of discrimination in his office. Under these circumstances, Bassett's allegations are sufficient to move forward. As for whether Bassett has pled herself out of court by providing a lawful motive for her increased duties, i.e., Cirelli's sudden retirement, the court disagrees. The amended complaint asserts that Cirelli verbally harassed Bassett based on her sex and disabilities and that an HR representative advised Bassett that a recommendation was once made to Wahl that Cirelli be terminated. The allegations of the amended complaint support reasonable inferences that Cirelli

retired in lieu of possible disciplinary action, and that Wahl imposed the double duty decision upon Bassett because she had complained about Cirelli's conduct to him and to the department's EEO office.

As for the January 2024 satisfactory EPR, the court discerns three different arguments from defendant's briefs. First, the Department of Corrections argues that the January 2024 satisfactory EPR was not materially adverse. Second, per defendant, allegations that the satisfactory EPR impairs Bassett's future promotions are too speculative to afford recovery. Third, defendant asserts that the allegations fail to demonstrate a causal link between the EEO complaint and the satisfactory EPR due to the passage of time between those two events.

In turn, all three arguments fall short. First, it is too early in this litigation to determine whether the satisfactory EPR was a materially adverse action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71 (2006) (stating that a determination of whether an employment action was materially adverse "depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' ") (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). Similarly, the arguments about future promotions being speculative are really challenges to Bassett's alleged damages, which the court will not entertain at this time without discovery or the opportunity for the plaintiff

24

to provide an expert report.  Finally, as to the connection between the EEO complaint in August 2023 and the satisfactory EPR in January 2024, a plaintiff may establish a causal link with a pattern of antagonism coupled with timing or from inferences gleaned from the record as a whole.  Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).  As discussed throughout this memorandum, the amended complaint provides allegations supporting a pattern of antagonism with the requisite timing to move the retaliation claims forward.  Thus, Bassett's retaliation claims in Count III (Title VII/PHRA) and Count V (ADA/PHRA) will not be dismissed.

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss will be denied.  An appropriate order follows.

Date: _9/16/25_

_____
JUDGE JULIA K. MUNLEY
United States District Court